IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO JAVIER MARTINEZ FRANCO,<br><br>        Plaintiff,<br><br>    v.<br><br>DAVID W. JENNINGS, et al.,<br><br>        Defendants. | Case No. 20-cv-02474-CRB<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER** |

Francisco Javier Martinez Franco requests a temporary restraining order releasing him from Immigration and Customs Enforcement detention or, in the alternative, ordering a bond hearing before an Immigration Judge. He argues that the Fifth Amendment's guarantee of substantive due process prohibits his detention, because the conditions of his confinement increase his risk of contracting COVID-19. The Court rejects this argument, and declines to order Martinez Franco's release, because he suffers from no underlying medical condition or other risk factor for serious illness from COVID-19. Martinez Franco also argues he is entitled to a bond hearing under Casas-Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008). The Court agrees, and grants the TRO on this basis.

## I.      BACKGROUND

Martinez Franco is a thirty-three-year old native and citizen of Mexico. Martinez Franco Decl. (dkt. 3-1 Ex. A) ¶¶ 1, 5. He has a number of criminal convictions, several of which are drug related. Id. ¶ 10.

On September 27, 2017, Martinez Franco was detained by ICE. Id. ¶ 1. He represented himself pro se in the ensuing removal proceedings, in which he sought cancellation of removal.

Id. ¶ 13. The Immigration Judge denied cancellation and the Board of Immigration Appeals affirmed, entering a final order of removal on August 27, 2018. BIA Decision (dkt. 3-1 Ex. C). Martinez Franco then filed a petition for review with the Ninth Circuit. That petition remains pending. Dkt. for Case No. 18-72479 (dkt. 3-1 Ex. D). Removal was stayed pending the Ninth Circuit's decision. See id.; see also Ninth Circuit General Order 6.4(c).

Martinez Franco remains in detention at the Mesa Verde Detention Facility. Martinez Franco Decl. ¶ 1. He sought a bond hearing on March 16, 2020, but the Immigration Judge ruled that she lacked jurisdiction to set bond under Jennings v. Rodriguez, 138 S. Ct. 830 (2018). IJ Decision (dkt. 3-1 Ex. G).

Martinez Franco fears contracting COVID-19 in detention. Martinez Franco Decl. ¶ 20. It is impossible for him to stay six feet away from other people, avoid touching objects and surfaces other people have touched, or properly sanitize. Id. ¶ 21–24. New detainees and staff come into the facility despite their exposure to the outside world and without wearing masks or gloves. Id. ¶¶ 25–26.

The Government avers that Mesa Verde is taking other measures to prevent an outbreak of COVID-19. These include screening new detainees for exposure to or symptoms of COVID-19, isolating detainees who have been exposed, tested positive, or show symptoms, increased sanitization, ending social visitation and limiting attorney contact visits, and screening staff and vendors for symptoms of COVID-19. Pham Decl. (dkt. 13-1) ¶¶ 10–11, 14. There are no suspected or reported cases of COVID-19 at Mesa Verde. Id. ¶ 17. And according to the Mesa Verde medical unit, Martinez Franco "is not at high risk and does not meet any of the high-risk criteria for severe illness from COVID-19 as set forth by the CDC." Id. ¶ 16.

## II. LEGAL STANDARD

A TRO is an "extraordinary remedy" that should only be awarded upon a clear showing that the plaintiff is entitled to such relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The party seeking a TRO must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. See id. at 20.

2

Alternatively, the moving party must demonstrate that "serious questions going to the merits were raised," "the balance of hardships tips sharply in the plaintiff's favor," and the other two Winter elements are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The "[l]ikelihood of success on the merits is the most important Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks omitted).

## III. DISCUSSION

The parties focus on the likelihood of success on the merits. Accordingly, this order addresses that issue first, then turns to a brief analysis of the other three Winter factors.

### A. Likelihood of Success on the Merits

Franco argues that the Fifth Amendment's guarantee of substantive due process requires his immediate release. Alternatively, he argues that either Casas-Castrillon or the Fifth Amendment's guarantee of procedural due process entitles him to a bond hearing. See Mot. (dkt. 3) at 1, 6.

#### 1. Substantive Due Process

Because Franco is a civil detainee, his conditions of confinement violate the Fifth Amendment if they "amount to punishment." Jonas v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)). Conditions of confinement amount to punishment if they are "expressly intended to punish," excessive in relation to their non-punitive purpose, or "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." Id. (internal quotation marks and citations omitted).

As an initial matter, the Government argues Franco lacks Article III standing to challenge the conditions of his confinement based on the risk of contracting COVID-19. To have Article III standing a plaintiff must have suffered an "injury in fact," that is "concrete and particularized, and . . . actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted). It must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotation marks omitted). The Government argues that because there are no recorded cases of COVID-19 at Mesa Verde and the facility is taking steps to prevent an outbreak, Martinez

Franco's "claim of future injury . . . based on his continued detention . . . is hypothetical." Opp'n (dkt. 13) at 8–9. And because Martinez Franco could hypothetically contract COVID-19 outside of detention, the Government thinks he has not demonstrated that release would ameliorate the risk of infection. Opp'n at 9–10.

This argument has been rejected by many, and perhaps all, courts that have considered it. See, e.g. Doe v. Barr, No. 20-cv-02141-LB, 2020 WL 1820667, at *8 (N.D. Cal. Apr. 12, 2020) (collecting cases). Most of these decisions rely on the Supreme Court's observation in Helling v. McKinney, 509 U.S. 25 (1993), that it would be "odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition on the ground that nothing yet had happened to them." Id. at 33. "[A] remedy for unsafe conditions need not await a tragic event." Id. The Court agrees that Helling is on point. The conditions Martinez Franco complains of pose a non-speculative risk of tragic consequences. That is enough to demonstrate Article III standing, even if the detention center is taking some preventative measures and has yet to record a case of COVID-19. See Bent v. Barr, No. 19-cv-06123-DMR, 2020 WL 1812850, at *3 (N.D. Cal. Apr. 9, 2020) ("Given the exponential spread of the virus, the ability of COVID-19 to spread through asymptomatic individuals, and the inevitable delays of court proceedings, effective relief for . . . detainees may not be possible if they are forced to wait until their particular facility records a confirmed case.").

The Government's theory that Franco has failed to show that immediate release would ameliorate his risk of contracting COVID-19 is equally unconvincing. Opp'n at 9–10. It does not take a public health expert to see that this argument is belied by common sense. In detention, social distancing, the most effective method of avoiding infection for the foreseeable future, is impossible. Martinez Franco Decl. ¶ 21–23; see also Centers for Disease Control and Prevention, Social distancing, quarantine, and isolation (Apr. 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html. Out of detention, social distancing would be possible. Release from detention therefore ameliorates the risk of infection with COVID-19.

Next, the Government argues that Franco cannot challenge the conditions of his confinement through a habeas petition. Opp'n at 10–11. This argument, too, has been rejected by

4

many if not all courts to consider it. See Doe, 2020 WL 1820667, at *8. Those decisions are correct. The Ninth Circuit has noted that it is "fairly well established" that a federal detainee can challenge the conditions of his confinement in an action brought under 28 U.S.C. § 2241. Workman v. Mitchell, 502 F.2d 1201, 1208 n.9 (9th Cir. 1974).

It is therefore necessary to assess the merits of Martinez Franco's Fifth Amendment claim. Courts considering similar claims are divided. At least one decision has rejected substantive due process claims premised on the risk of contracting COVID-19 while in immigration detention. Judge Robart of the Western District of Washington reasoned that there is no evidence that confinement during the pandemic is intended to punish; it serves the "legitimate governmental objective" of "preventing detained aliens from absconding and ensuring that they appear for removal proceedings." Dawson v. Asher, No. C20-0409JLR-MAT, 2020 WL 1304557, at *2 (W.D. Wash. Mar. 19, 2020). Given that the petitioner's facility had no recorded COVID-19 outbreak and was taking steps to prevent the virus's spread, continued confinement was not "excessive in relation to that objective." Id. Judge Robart noted that he was aware of no authority for the proposition that "the fact of detention itself becomes an 'excessive' condition solely due to the risk of a communicable disease outbreak—even one as serious as COVID-19." Id. On the other hand, numerous decisions, including in this district, have ordered detainees who were particularly vulnerable to serious illness from COVID-19 released because the heightened risk of contracting the virus rendered detention "excessive in relation to the government's interest in securing [their] presence at immigration proceedings." See Doe, 2020 WL 1820667, at *9 (collecting cases).

But ordering Martinez Franco released would go further than any previous decision, because he does not claim to be in a category of persons particularly vulnerable to serious illness from COVID-19 or to have any underlying medical condition. Franco does not identify, and the Court has not seen, a case finding that increased likelihood of contracting the virus rendered unconstitutional the detention of a person without underlying medical conditions or some other

5

vulnerability.[1]

Franco points out that COVID-19 can cause death or serious illness in people who do not suffer from underlying medical conditions or other risk factors. Reply (dkt. 15) at 7–8. Be that as it may, most young, healthy people who contract the virus do not suffer life-threatening illness. See Centers for Disease Control and Prevention, Severe outcomes among patients with coronavirus disease 2019 (COVID-19) — United States, February 12–March 16, 2020 (March 27, 2020), cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. "[C]onstitutional rights are personal," Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973), so it is appropriate to take Franco's risk of serious illness into account when considering his likelihood of success on this claim, see also Ortuño v. Jennings, No. 20-cv-02064-MMC, 2020 WL 1701724, at *3 (N.D. Cal. Apr. 8, 2020) (denying a TRO as to petitioners who failed to demonstrate an underlying medical condition placing them at heightened risk from COVID-19). Given the absence of a recorded COVID-19 case at Mesa Verde, the steps the facility is taking to prevent an outbreak, and, most importantly, the fact that Martinez Franco does not profess to be at heightened risk of serious illness from COVID-19, the Court finds that his detention is not disproportionate to the non-punitive government purposes it serves. See Habibi v. Barr, No. 20-cv-00618-BAS-RBB, 2020 WL 1864642, at *4–5.

Martinez Franco's argument that his treatment is "less considerate" than that of criminal detainees suffers a similar flaw. See Mot. at 9–10. He points out that convicted prisoners have

---

[1] None of the cases Franco identifies fit the bill. See Reply at 8–9. One certified a class of all detainees facing an increased risk of infection but did not actually release any detainee who was not particularly. Savino v. Souza, No. 20-10617-WGY, 2020 WL 1703844, at *7 (D. Mass. Apr. 8, 2020). Others involved petitioners who did not fall into a category of heightened risk recognized by the CDC, but nevertheless suffered from underlying medical conditions. Malam v. Adducci, No. 20-10829, 2020 WL 1809675, at *3 (E.D. Mich. Apr. 9, 2020); Castillo v. Barr, CV 20-00605 TJH (AFMx), 2020 WL 1502864, at *1 (C.D. Cal. Mar. 27, 2020). And still others have justified release primarily on grounds other than the risk of infection. Ali v. DHS, No. 4:20-cv-0140, 2020 WL 1666074, at *3–5 (S.D. Tex. Apr. 2, 2020) (petitioner ordered released because justification for detention, imminent deportation, disappeared when Pakistan closed its borders); Calderon Jimenez v. Wolf, No. 1:18-cv-10225-MLW, Dkt. 507-1, at 2:16–3:23 (petitioner ordered released because it appeared that original justification for his detention was incorrect). The Ninth Circuit's unreported order in Xochihua-Jaimes v. Barr, No. 18-71460, 2020 WL 1429877 (9th Cir. Mar. 24, 2020), contains one sentence of reasoning and does not address whether the petitioner suffered from underlying medical conditions or was otherwise particularly vulnerable to COVID-19. Id. at *1.

been released from jails and prisons to slow the spread of COVID-19, id. at 10, but offers no evidence that criminal detainees have been released indiscriminately, without reference to their vulnerability to COVID-19, flight risk, or dangerousness to the community.

Even if the Court agreed that civil detention is unconstitutional whenever it impairs proper social distancing, Martinez Franco's requested relief is not an appropriate means to implement that rule. Martinez Franco is not seeking an injunction requiring the government to implement appropriate social distancing at Mesa Verde. He seeks only release from detention, and only for himself. If the Constitution requires appropriate social distancing for civil detainees, that result should be achieved with an injunction ordering social distancing in detention facilities, not releasing detainees who request a TRO on a first-come, first-serve basis. See Dawson, 2020 WL 1304557, at *2 ("[E]ven if Plaintiffs could show a Fifth Amendment violation, Plaintiffs provide no authority under which such a violation would justify immediate release, as opposed to injunctive relief that would leave Plaintiffs detained while ameliorating any alleged violative conditions within the facility.").

### 2. Request for a Bond Hearing

Martinez Franco's first argument for a bond hearing relies on Casas-Castrillon's holding that 8 U.S.C. § 1226(c) authorizes detention only until the BIA issues a final order of removal. 535 F.3d at 948. After the BIA has issued a final order of removal, detention is authorized under 8 U.S.C. § 1226(a), even if removal is stayed pending review by the Court of Appeals. Id. The switch is consequential, because while detention is mandatory under § 1226(c), it is discretionary under § 1226(a). See id. at 951; see also 8 U.S.C. § 1226. Noncitizens detained under § 1226(a) are therefore entitled to a bond hearing, while those detained under § 1226(c) are not. Casas-Castrillon, 535 F.3d at 951. Casas-Castrillon means that when a detainee who, like Martinez Franco, was originally subject to mandatory detention under § 1226(c) becomes subject to a final order of removal issued by the BIA, the authority for his detention switches to § 1226(a), entitling him to a bond hearing.

The Government does not contest that Casas requires this result. Instead, it argues that Casas is no longer good law, because it cannot be reconciled with the Supreme Court's decision in

7

Jennings. Opp'n at 14–16. This Court rejected that argument earlier this month. See Avilez v. Barr, No. 19-cv-08296-CRB, 2020 WL 1704456, at *3 (N.D. Cal. April 8, 2020). Martinez Franco has demonstrated a likelihood of success on his claim that Casas-Castrillon entitles him to a bond hearing. It is therefore unnecessary to consider his alternative argument that the Fifth Amendment's guarantee of procedural due process entitles him to a bond hearing.

### B. Other Winter Factors

The other Winter factors are also satisfied. The Ninth Circuit has recognized that the harms Martinez Franco faces from continued detention without a bond hearing—including economic hardship and separation from his family—are irreparable. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017); see also Martinez Franco Decl. ¶¶ 17–19. The balance of equities tips in Martinez Franco's favor because the cost of a bond hearing is minimal when weighed against these severe and irreparable hardships. See id. at 996. Finally, and similarly, the public interest does not weigh against a TRO. If anything, it weighs in favor of one, because the Court must consider the hardship to Martinez Franco's family and friends and the waste of public resources from the expense of his possibly unnecessary detention. See id.

## IV. CONCLUSION

For the foregoing reasons, Martinez Franco's request for a TRO ordering a bond hearing is granted. He must be provided with a bond hearing before an immigration judge within fifteen days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: April 24, 2020

CHARLES R. BREYER
United States District Judge